IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 3:15-CR-496-L |
| | § | |
| USPLABS, LLC (01) | § | |
| JACOBO GEISSLER (02) | § | |
| JONATHAN DOYLE (03) | § | |
| MATTHEW HEBERT (04) | § | |
| KENNETH MILES (05) | § | |
| S.K. LABORATORIES, INC. (06) | § | |
| SITESH PATEL (07) | § | |
| CYRIL WILLSON (08) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant Matthew Hebert's Motion for Severance (Doc. 357), filed October 6, 2017; Defendant Cyril Willson's Motion to Sever (Doc. 359), filed October 18, 2017; Defendant Kenneth Miles' Motion to Sever (Doc. 391), filed December 29, 2017; Defendants USPlabs, LLC, Jacobo Geissler, Jonathan Doyle, Kenneth Miles, and Cyril Willson's Joint Motion to Sever (Doc. 388), filed December 29, 2017; Defendants S.K. Laboratories and Patel's Motion to Sever Counts Six, Nine, and Eleven for Trial and to Reserve with Respect to Severance of Co-Defendants (Doc. 389), filed December 29, 2017; and Defendants' Motion to Sever Count Ten of the Superseding Indictment (Doc. 382), filed December 29, 2017 (sometimes collectively, "Defendants' Motions to Sever"). After careful consideration of the motions, responses, record, and applicable law, for the reasons herein stated, the court **denies** Defendants' Motions to Sever.

**I.    Factual Background**

On January 5, 2016, the Government filed an 11-Count Superseding Indictment ("the Indictment") (Doc. 95) against six individuals and two entities. Defendants are USPlabs, LLC ("USPlabs"), a dietary supplement own-label distributor based in Dallas, Texas; Jacobo Geissler

("Geissler"), a co-founder, co-owner, and chief executive officer of USPlabs; Jonathan Doyle ("Doyle"), a co-founder, co-owner, and president of USPlabs; Matthew Hebert ("Hebert"), a co-owner of USPlabs responsible for product packaging design; Cyril Willson ("Willson"), also known as "Erik White," a consultant to USPlabs, formerly a co-owner; Kenneth Miles ("Miles"), USPlabs' compliance officer; S.K. Laboratories, Inc. ("S.K. Labs"), a California corporation that manufactured USPlabs' supplements and consulted on supplement formulation; and Sitesh Patel ("Patel"), a vice-president and employee of S.K. Labs.

The charges in the Indictment stem from USPlabs' sale of dietary/weight loss supplements manufactured by S.K. Labs. Doc. 95 at 5-6. The Indictment generally alleges that Defendants conspired to import and sell synthetic dietary supplements but falsely marketed the products as plant-based under the theory that federal regulatory agencies would be less likely to question the importation of plant extracts, and retailers would be more likely to sell such products. Doc. 95 at 6. The Indictment further alleges that, during the conspiracy, certain Defendants created false documentation to import a synthetic substance—1,3-dimethylamylamine, known as DMAA—which they represented as a geranium plant extract. According to the Indictment, some of the Defendants then used DMAA in their supplements, which thereafter became best-selling products. Doc. 95 at 7, 14-15.

The Indictment further alleges that when DMAA became the subject of controversy in the dietary supplement industry, USPlabs, through Geissler, began importing other chemicals under false labels to determine whether they could be used in new dietary supplements. Doc. 95 at 9. Two such ingredients were aegeline, a synthetic version of an extract from a tree native to India, and cynanchum auriculatum ("CA"), the pulverized roots of a Chinese herb, both of which USPlabs is

alleged to have purchased from China using fake certificates of analysis ("COA").[1]  The first

aegeline-containing version of one of Defendants' supplements was OxyElite Pro "New Formula"

("OEP-NF").  Doc. 95 at 9-10.  The second version of the supplement contained both aegeline and

CA and was called OxyElite Pro "Advanced Formula" ("OEP-AF").  Doc. 95 at 10.

As alleged in the Indictment, in the fall of 2013, an outbreak of injuries was reported to be

associated with USPlabs' aegeline-based products after numerous consumers in Hawaii experienced

liver-related symptoms, including liver failure.  Doc. 95 at 11.  Following an inspection by the

United States Food and Drug Administration ("FDA"), USPlabs agreed to cease distributing the OEP

products but is alleged to have instead pushed sales as fast as possible.  Doc. 95 at 11.  The

Indictment also alleges that USPlabs issued a press release falsely stating that the ingredients in OEP

had been researched and showed no negative liver effects, even though Defendants Geissler and

Willson knew that a study had shown such negative side effects.  Doc. 95 at 11.  Eventually, Geissler

instructed that both aegeline and CA be removed from the product going forward. Doc. 95 at 11.

The Indictment contains the following charges[2]:

> **Count 1** - *Conspiracy to Commit Wire Fraud* (as to all Defendants except Miles), 18
> U.S.C. §§ 1343, 1349; Doc. 95 at 12-17. This count involves Defendants' alleged use
> of false shipping labels, false COAs, and false shipping documentation to support
> misleading product labeling in relation to statements that the respective supplements
> contained "natural" DMAA derived from geranium and CA "extract" (as opposed to
> CA "root").

---

[1] The Food and Drug Administration defines a COA as "a document, provided by the supplier of a component prior to or upon receipt of the component, that documents certain characteristics and attributes of the component." Guidance for Industry Current Good Manufacturing Practice in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, 2010 WL 5574459, at *9 (Dec. 1, 2010).

[2] The Indictment spells out the number of each count rather than using Arabic numerals, for example, "Count One," instead of "Count 1."  The parties sometimes refer to the counts with Arabic numerals and other times spell out the number of each count.  For purposes of consistency, the court will use Arabic numerals when referring to the counts in the Indictment, except when quoting the exact title of a motion.

**Counts 2-5** - *Wire Fraud* (as to all Defendants except Miles), 18 U.S.C. § 1343; Doc. 95 at 18-19. These counts involve Defendants' alleged transmission in interstate commerce, by means of wire communications and writing, of false and fraudulent COAs, instructions to create false documents, and other fraudulent statements contained in e-mails.

**Count 6** - *Obstruction of an Agency Proceeding* (as to Defendants USPlabs, Geissler, Doyle, and Hebert only), 18 U.S.C. §§ 2, 1505; Doc. 95 at 20-21. This count charges that, during the FDA investigation regarding whether an outbreak of liver injuries was associated with USPlabs' products containing aegeline, Defendants USPlabs, Geissler, Doyle, and Hebert continued to distribute OEP products despite representing to the FDA that they would cease distribution, and attempted to impede the FDA's investigation by failing to provide material information about OEP, the anticipated shipments of OEP, and promotional activities for OEP.

**Count 7** - *Conspiracy to Introduce Misbranded Food into Interstate Commerce with an Intent to Defraud and Mislead* (as to all Defendants except Miles), 18 U.S.C. § 371; 21 U.S.C. §§ 331(a), 333(a)(2); Doc. 95 at 22-24. This count alleges that certain Defendants conspired to avoid law enforcement attention and match imported substances with false product labeling by instructing Chinese chemical sellers to falsely label numerous chemical powders they sent to USP, including "geranium flower powder extract" and CA root "extract."

**Count 8** - *Introduction of Adulterated Food into Interstate Commerce with an Intent to Defraud and Mislead* (as to Defendants USPlabs and Geissler only), 21 U.S.C. §§ 331(a), 333(a)(2); 18 U.S.C. § 2; Doc. 95 at 25. This count alleges that Defendants USPlabs and Geissler, aiding and abetting each other, with the intent to defraud and mislead, caused the shipment of misbranded OEP-AF in interstate commerce by using a label falsely declaring that CA "extract" was an ingredient, even though it was not contained in the product.

**Count 9** - *Introduction of Misbranded Food into Interstate Commerce* (as to Defendants Doyle, Hebert, Miles, S.K. Labs, and Patel only), 21 U.S.C. §§ 331(a), 333(a)(2); Doc. 95 at 26. This count alleges that Defendants Doyle, Hebert, Miles, S.K. Labs, and Patel caused the shipment of misbranded OEP-AF in interstate commerce when the food was misbranded under the Food Drug and Cosmetic Act ("FDCA") by using a false label declaring that CA "extract" was an ingredient, even though it was not contained in the product.

**Count 10** - *Introduction of Adulterated Dietary Supplement into Interstate Commerce* (as to all Defendants except Willson), 21 U.S.C. §§ 331(a), 333(a)(1), and 342(f)(1)(A)(I); Doc. 95 at 27. This count alleges that Defendants caused the shipment of adulterated OEP-NF in interstate commerce, as the supplement "presented a significant or unreasonable risk of illness or injury under conditions of use recommended or suggested in labeling."

**Count 11** - *Conspiracy to Commit Money Laundering* (as to Defendants USPlabs, Geissler, Doyle, and Hebert only), 18 U.S.C. § 1956(h); Doc. 95 at 28-29. This count alleges that Defendants USPlabs, Geissler, Doyle, and Hebert conspired to transfer over $230,000,000 of proceeds obtained through wire fraud and conspiracy in a manner designed to conceal the true source and nature of the criminally derived funds.

Multiple Individual Defendants and various combinations of Codefendants have moved for severance, asserting prejudicial joinder under Federal Rule of Criminal Procedure 14 ("Rule 14") or misjoinder of counts under Federal Rule of Criminal Procedure 8(a) ("Rule 8(a)"). Specifically, Defendants Hebert, Willson, and Miles, individually, move for severance from all other Codefendants under Rule 14. Defendants USPlabs, Geissler, Doyle, Miles, and Willson (sometimes collectively, the "USPlabs Defendants") seek severance from Patel and S.K. Labs under Rule 14. Patel and S.K. Labs (sometimes collectively, the "S.K. Labs Defendants") move to sever Counts 6, 9, and 11 under Rule 14 and Rule 8, and also request that the court hold in abeyance their motion to sever from Codefendants. In addition, pursuant to Rule 8(a), all Defendants move collectively to sever Count 10, arguing that it is not sufficiently related to Counts 1 through 9 or 11 for a joint trial.

The Government opposes Defendants' Motions to Sever. After considering the applicable legal standards for severance, the court will address the pending motions.

## II.    Legal Standards

### A.    Propriety of Joinder under Rules 8(b)

In cases involving "multiple defendants as well as multiple counts, Rule 8(b) . . . provides the relevant standard." *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988) (citation omitted). Rule 8(b) provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). "Joinder of charges is the rule rather than the exception[,] and Rule 8 is construed liberally in favor of initial joinder." *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995) (citation omitted).

Whether joinder is proper is determined from the allegations in the indictment, which, absent any suggestion of prosecutorial misconduct, are accepted as true. *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (citation omitted); *Kaufman*, 858 F.2d at 1003 (citation omitted); *see also United States v. Potashnik*, 2008 WL 5272807, at *4 (N.D. Tex. Dec. 17, 2008) (Lynn, J.) ("Rule 8(b) requires the trial court to determine the propriety of joinder of *defendants*, by looking to the *substance of the counts* in the indictment, and whether the defendants are alleged to have participated in the same act or transaction, or same series of acts or transactions.") (original emphasis). "Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining the relatedness of the facts underlying each offense." *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) (internal quotation marks omitted). Proper joinder requires that the offenses charged "must be shown to be part of a single plan or scheme," and that "[p]roof of a common scheme is typically supplied by an overarching conspiracy from which stems each of the substantive counts." *United States v. Lane*, 735 F.2d 799, 805 (5th Cir. 1984), *rev'd on other grounds*, 474 U.S. 438 (1986); *see also United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995) (Rule 8(b)'s requirement is ordinarily satisfied by the allegation of an overarching conspiracy that encompasses the substantive offenses charged in the indictment.); *United States v. Phillips*, 664 F.2d 971, 1016 (5th Cir. Unit B 1981), *overruled in other respects based on a rule amendment*, *United States v. Huntress*, 956 F.2d 1309 (5th Cir. 1992) ("It is well settled that joinder under Rule 8(b) is proper where an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy."). The Government,

however, is not required to allege a conspiracy in order to join defendants or counts.  *See McRae*, 702 F.3d at 821 (citing *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. Unit B 1981)) ("Although multi-defendant and multi-offense indictments often charge a conspiracy among some or all defendants, we have repeatedly rejected the contention that proper joinder of multiple defendants and multiple offenses requires a conspiracy charge.").  In *Dennis*, the Fifth Circuit stated, "It is clear that the government need not allege a conspiracy in order to join defendants or counts." 645 F.2d at 520.  Instead, "[w]hat is required is a series of acts unified by some 'substantial identity of facts or participants.'"  *Id.* (quoting *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978)).

### B.      Rule 14 Severance as Relief from Prejudicial Joinder

Rule 14 provides the court with flexibility in its management of the case when a joint trial may appear to risk creating prejudice to a party.  Severance under Rule 14 is based on the trial court's discretion.  *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").  Rule 8(b), by contrast, "requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice." *Id.*

Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  "The federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  *McRae*, 702 F.3d at 821 (quoting *Zafiro*, 506 U.S. at 537).  "It is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.'"  *Id.* (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir.

1993)); *see also United States v. Mikolajczyk*, 137 F.3d 237, 240 (5th Cir. 1998) ("Joinder is the rule rather than the exception[.]"); *United States v. Featherston*, 949 F.2d 770, 773 (5th Cir. 1991) ("This rule is especially strong when the defendants are charged with committing the same conspiracy."). "But at the same time, the Federal Rules of Criminal Procedure recognize that circumstances may be presented where the prejudice to a defendant from joinder with a co-defendant(s) in a joint trial overrules the interest in judicial economy." *McRae*, 702 F.3d at 821-22.

"To surmount this heavy presumption [in favor of joinder], a defendant must show that '(1) the joint trial prejudice[s] him to such an extent that the district court [can]not provide adequate protection; and (2) the prejudice outweigh[s] the government's interest in economy of judicial administration.'" *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (quoting *United States v. Owen*s, 683 F.3d 93, 98 (5th Cir. 2012)). "Generic allegations of prejudice will not suffice, for 'neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance.'" *Id.* (quoting *Krout*, 66 F.3d at 1430). A defendant must show a "specific compelling prejudice" resulting from joinder. *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007); *see also United States v. Hamilton*, 694 F.2d 398, 401 (5th Cir. 1982) ("[T]he defendant bears a heavy burden of showing specific and compelling prejudice."); *United States v. Park*, 531 F.2d 754, 762 (5th Cir. 1976) (Under Rule 14, "The burden of demonstrating prejudice is a difficult one. . . . The defendant must show something more than the fact that a separate trial might offer him a better chance of acquittal."). Prejudice occurs when there is a serious risk that a jury will be prevented "from making a reliable judgment about guilt or innocence." *United States v. Rodriguez*, 553 F.3d 380, 394 (5th Cir. 2008). A district court's decision not to sever counts will only be reversed if "the defendant can convincingly demonstrate that a genuine prejudice to his trial strategy

outweighed considerations of judicial economy in proceeding with a single trial." *United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973).

In addition, in conspiracy cases, the Fifth Circuit "generally favor[s] specific instructions over severance." *Ledezma-Cepeda*, 894 F.3d at 690. "That is because it is generally presumed that juries follow the instructions given to them by the district court and are capable of compartmentalizing the evidence against each defendant." *Id.* (internal citations, brackets, and quotation marks omitted); *see also United States v. Zicree*, 605 F.2d 1381, 1388-89 (5th Cir. 1979) ("The test for such prejudice is [w]hether under all the circumstances of the particular case, . . . it is within the capacity of the jurors to follow the court's admonitory instructions and . . . collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct."). Even when the evidence in a case is "both massive and complex," the court can "explicitly instruct[ ] the jury to consider each offense separately and each defendant individually." *United States v. Whitfield*, 590 F.3d 325, 356 (5th Cir. 2009) (quoting *United States v. Manzella*, 782 F.2d 533, 540 (5th Cir. 1986)) (internal quotation marks omitted). "Limiting instructions such as these are generally 'sufficient to prevent the threat of prejudice resulting from unsevered trials.'" *Id.* (quoting *United States v. Massey*, 827 F.2d 995, 1005 (5th Cir. 1987)).

## III.    Analysis

As previously explained, multiple Individual Defendants and various combinations of Codefendants have moved for severance based on prejudicial joinder with Codefendants under Rule 14, misjoinder under Rule 8(b), or both. Defendants Hebert, Willson, and Miles, individually, move for severance from all other Codefendants under Rule 14. The USPlabs Defendants seek severance from the S.K. Labs Defendants under Rule 14. The S.K. Labs Defendants move to sever Counts 6, 9, and 11 under Rule 14 and Rule 8(b), and also request that the court hold in abeyance their motion

to sever from Codefendants. In addition, Defendants collectively move to sever Count 10 under Rule 8(b), arguing that it is improperly joined with the other counts in the Indictment and, additionally, under Rule 14, arguing that joinder of Count 10 in the Indictment will result in jury confusion and prejudice. The court will address the pending motions in turn, as well as the Government's opposition to the relief sought.

### A. Individual Defendants Hebert's, Willson's, and Miles' Motions to Sever under Rule 14 (Docs. 357, 359, 391)

Pursuant to Rule 14, Defendants Hebert, Willson, and Miles, individually, seek severance from all other Codefendants.[3] The motions center on three primary arguments: (1) possible spillover from evidence introduced against Codefendants at a joint trial is prejudicial; (2) the inability to present exculpatory testimony of a Codefendant at a joint trial is prejudicial; and (3) different Codefendants may have defenses that are adverse to each other.[4] The court addresses each of the three primary arguments in turn.

---

[3] Defendant Hebert states that he is not opposed to trial with Codefendants Willson and Miles.

[4] The Individual Defendants also make oblique reference to potential violations of the Confrontation Clause through the Government's use of out-of-court statements by Codefendants. For example, Hebert asserts that the "specter" of the Government introducing excerpts from Codefendants Geissler's and Doyle's civil deposition transcript "presents the Court with *Bruton* problems." Hebert's Mot. to Sever 7 (Doc. 357) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). In *Bruton*, the Supreme Court examined the effect of introducing a declarant-codefendant's confession at trial against the declarant alone, when the confession implicates another codefendant. The Supreme Court noted that, while limiting instructions are often a means of resolving possible evidentiary issues, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135. Accordingly, the Court held that the admission at a joint trial of a non-testifying accomplice's confession that also implicates the codefendant violates the non-declarant codefendant's right of confrontation. *Id.* at 137. At this juncture, as the Government has not indicated to the court that it intends to introduce statements that may inculpate a non-declarant Codefendant, the issue has not been joined. The Individual Defendants may reurge this argument in the event their constitutional concerns materialize, at which point the court may consider directing the Government to produce for in camera inspection any Defendants' statement it intends to use as evidence.

## 1.    Severance Based on Prejudicial Evidentiary Spillover

Willson and Miles, individually, have moved for severance from all Codefendants, and Hebert has moved for severance from all Codefendants other than Willson and Miles, each pointing to the risk of prejudice and guilt by association arising from a trial in which the majority of the charges in the Indictment and the quantum of evidence pertain to Defendants Geissler, Doyle, and Patel, and some of the evidence would be inadmissible were each tried alone.  *See* Docs. 357, 359, 391.  Each also raises the additional concern of the risk of prejudice from the spillover effect of being tried jointly with Geissler, who has a prior criminal conviction,[5] and Patel, who was convicted in early 2017 in the Western District of Virginia of fraud and conspiracy charges related to the sale of illegal prohormone products that caused liver injuries among consumers.  *See United States v. Patel*, No. 16-cr-34 (W.D. Va. filed July 26, 2016).[6]

### a.    Standard  - Spillover Effect

"Criminal defendants indicted and tried together often claim prejudice resulting from the spillover effect; that is, prejudice that may result from the introduction of evidence at trial relating to co-conspirators that is irrelevant to a particular defendant, such as evidence of the codefendants' other crimes or bad conduct."  *Potashnik*, 2008 WL 5272807, at *8.  When considering severance

---

[5] According to the Government, "Geissler has a criminal record—a Texas state felony conviction from the early 2000s related to anabolic steroids, which [it] believes was expunged at some point in the late 2000s."  Gov't's Resp. to Willson's Mot. to Sever 4 (Doc. 363).

[6] The USPlabs Defendants have attached a copy of the Indictment (Doc. 388-2) and the jury's verdict (Doc. 388-1) in *United States v. Patel*.  On July 26, 2016, Patel was charged with conspiracy, misbranding, fraud, and wire/mail fraud in the Western District of Virginia.  The indictment alleged Patel was involved in the manufacture of "M-Drol," a "designer steroid," and "H-Drol," a "designer drug."  Doc. 388-2, ¶¶ 14-15.  The indictment alleged that the labeling for "M-Drol" and "H-Drol" was misbranded because the products were labeled as dietary supplements, rather than drugs, and, therefore, bore false and misleading labeling that lacked adequate warnings or directions for use as drugs.  *Id.* ¶¶ 16-17.  After a five-day trial, the jury found Patel guilty on all counts.  Doc. 388-1.

based on evidentiary concerns, "the mere presence of a spillover effect does not ordinarily warrant severance." *Pofahl*, 990 F.2d at 1483 (citations omitted). "The risk of prejudice will vary with the facts in each case[.]" *Zafiro*, 506 U.S. at 539. "Evidence of the reputation or past crimes of a co-defendant does not ordinarily justify severance." *Harrelson*, 754 F.2d at 1178 (collecting cases). Further, "a quantitative disparity in the evidence [among co-defendants] is clearly insufficient in itself to justify severance." *Pofahl*, 990 F.2d at 1483 (internal quotation marks and citation omitted). Moreover, "prejudice that may result from introduction of evidence at trial relating to co-conspirators that is irrelevant to a particular defendant . . . does not require severance." *Potashnik*, 2008 WL 5272807, at *8.

As a general rule, even if more damaging evidence is presented against one defendant than another, "severance is not the proper means of confining 'spillover' evidence. The pernicious effect of [ac]cumulation is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the government." *United States v. Allen*, 2011 WL 2326972, at *2 (N.D. Tex. June 14, 2011) (Fitzwater, C.J.) (citing *United States v. Piaget*, 915 F.3d 138, 142 (5th Cir. 1990)). The Fifth Circuit has repeatedly ruled that limiting instructions are adequate to remedy most potential prejudice. *United States v. Neal*, 27 F.3d 1035, 1046 (5th Cir. 1994) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."); *Bullock*, 71 F.3d at 175 (prejudice "c[an] be cured with proper instructions and juries are presumed to follow their instructions.").

### b.    Discussion

Defendant Hebert, who is charged in seven separate counts of the Indictment, contends he is "a minor player in this case [and] was apparently indicted and subjected to an illegal asset freeze

in an effort to coerce a guilty plea and testimony against his co-defendants." Hebert's Mot. to Sever 4 (Doc. 357).[7] He argues that a joint trial with Codefendants USPlabs, Geissler, Doyle, Patel, and S.K. Labs will lead to a prejudicial spillover effect because "the quantum of evidence against others in the trial will be so great that any limiting instructions by the Court will not be effective." *Id.* at 2. Hebert emphasizes his limited role as "the graphics man [who] had computer familiarity his colleagues lacked," *id.* at 1, and his domicile in Massachusetts, rather than in Texas. *Id.* at 5. He contends that evidence concerning meetings and conferences held in Texas at which he was not in attendance will be introduced to the jury, and it "will have difficulty separating him from other people's statements and actions." *Id.* at 6. Hebert further asserts that the spillover effect of the evidence presented at trial related to his codefendants will be prejudicial to him because the "over-flow effect of the evidence would prejudice [him] to the extent of denying him a fair trial in violation of Rule 14(a)[.]" *Id.* at 2. He also has concerns about the spillover effect of being tried with Patel based on his criminal conviction and contends his communications with Patel "could cast [him] in a bad light" and "enhance the possibility of jury confusion and set [him] up for a significant spillover effect." *Id.* at 6.

Defendant Willson, who is charged in three counts of the Indictment, similarly contends that severance is required because of his "extremely small role in this case[]" and because "the facial

_____

[7] Paragraph 4 of the Indictment alleges that Hebert "was a co-owner of USPlabs with primary responsibility over product packaging design." Doc. 95 at 2, ¶ 4. Paragraph 26 of the Indictment alleges that Hebert, along with USPlabs, Geissler, and Doyle "told lies" to certain retailers, "claiming falsely that the DMAA in USPlabs' products was a natural extract sourced from geranium plants." *Id.* at 8, ¶ 26. Hebert is charged in the Indictment in Counts 1 (conspiracy to commit wire fraud), 2 (one substantive count of wire fraud), 6 (obstruction of an agency proceeding), 7 (conspiracy to introduce misbranded food into interstate commerce with an intent to defraud and mislead), 9 (introduction of misbranded food into interstate commerce), 10 (introduction of adulterated dietary supplement into interstate commerce), and 11 (conspiracy to commit money laundering).

nature of the allegations against [him] is far less reprehensible than that of the allegations against the other defendants." Willson's Mot. to Sever 7-8 (Doc. 359).[8] He argues that he "would be prejudiced by the highly inflammatory nature of the charges against the other defendants[,]" and:

> [b]ecause the charges against [him] involve only the alleged mislabeling of a single ingredient as an extract, [he] would be highly prejudiced by a joint trial which would associate him with the alleged harm—that he is not accused of causing—and subject him to "mountainous evidence" not directly applicable to the charges or likely useable against him.

*Id.* at 8. He also argues that a "joint trial would prejudice [him] by associating him with Geissler and Patel, who both have felony convictions." *Id.* at 8-9.

Defendant Miles, who is charged in two misdemeanor counts of the Indictment, argues he would be prejudiced by the conduct of his more culpable codefendants and emphasizes that the non-felony nature of his prosecution sets him apart from his codefendants, who are charged with felony counts of conspiracy, wire fraud, obstruction, and money laundering. He notes his "name is not even mentioned until page 26 [of the Indictment]" and "mentioned only on pages 26 and 27 in Counts Nine and Ten[,] alleg[ing] strict liability misdemeanors[.]" Miles' Mot. to Sever 1 (Doc. 391).[9] He further argues that he "will be unduly prejudiced by 'harmful spillover' of evidence against the other defendants[,]" and that the "great disparity in evidence, offered against codefendants in a joint trial,

---

[8] Paragraph 7 of the Indictment alleges that Willson was "a former co-owner of USPlabs" and "was responsible for coordinating much of [its] scientific research and for identifying substances as prospective ingredients for [its] products." Doc. 95 at 2, ¶ 7. He is charged in the Indictment in Count 1 (conspiracy to commit wire fraud), Count 5 (one substantive count of wire fraud), and Count 7 (conspiracy to misbrand food).

[9] Paragraph 67 of the Indictment alleges that Miles was "the quality assurance executive in charge of ensuring the compliance of USPlabs' products with the FDCA." Doc. 95 at 26, ¶ 67. He is charged in the Indictment in Count 9 (introduction of misbranded food into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(1)) and Count 10 (introduction of adulterated dietary supplement into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(1)), both misdemeanor counts.

will cause compelling prejudice to such an extent that this court will be unable to provide adequate protection and the prejudice will outweigh any interest in economy of judicial administration." *Id.* at 6. He contends a joint trial would be unduly prejudicial based on the spillover effect of being tried with Geissler and Patel, both of whom have prior criminal convictions.

The Government counters that, even assuming Hebert, Willson, and Miles have shown some amount of prejudice resulting from the spillover effect of evidence introduced at a joint trial, they fail to explain adequately why a limiting instruction by the court would not be sufficient to address their concerns, or why this case is so exceptional that the court should vary from the normal rule that defendants indicted together should be tried together. *See* Gov't's Resp. to Hebert's Mot. to Sever 2-4 (Doc. 360); Gov't's Resp. to Willson's Mot. to Sever 4-6 (Doc. 363); Gov't's Resp. to Miles' Mot. to Sever 2-5 (Doc. 414). According to the Government, even assuming a quantitative disparity in the evidence among codefendants and the admission at trial of a codefendant's prior convictions, absent exceptional circumstances not present here, the Fifth Circuit would not require a severance, and an appropriate limiting instruction would suffice to prevent the threat of prejudice of admission of evidence incriminating against one codefendant but not another. The Government further contends that, even were Hebert, Willson, and Miles able to show some amount of prejudice, they have not shown that the prejudice outweighs the Government's interest in economy of judicial administration. According to the Government, movants are essentially asking for this court to conduct two nearly identical months-long trials because a codefendant was convicted in an unrelated

matter. Finally, the Government argues that movants rely on inapposite cases in support of their respective arguments that severance is required.[10]

The court has carefully considered the legal arguments and applicable law summarized above, as well as the allegations in the Indictment. For the reasons that follow, the court rejects Hebert's, Willson's, and Miles' respective Rule 14 motions to sever based on the risk of prejudice from the potential spillover of evidence in a joint trial with Codefendants, two of whom have prior criminal convictions.

In arguing that evidence against Codefendants may cause a prejudicial spillover effect and prevent the jury from treating their respective cases individually, Hebert, Willson, and Miles rely primarily on three Fifth Circuit cases: *McRae*, 702 F.3d 806; *United States v. Erwin*, 793 F.2d 656, 665 (5th Cir. 1986); and *United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998).[11] These three cases are distinguishable.

*McRae* involved a police shooting in the aftermath of Hurricane Katrina in 2005. 702 F.3d at 811. In that case, the appellant's codefendants engaged in cover-up acts with which he was not charged or involved, including burning the body of the victim. *Id.* at 825-27. The Fifth Circuit held that the district court abused its discretion in denying appellant's request for severance under Rule 14. *Id.* at 828 ("We do not fault the district court for declining to sever Warren's case before trial, but as the trial progressed, however, and the evidence and testimony presented became irrelevant and

---

[10] The Government also argues it is premature to ask for a severance based on a codefendant's criminal conviction, as it anticipates that Defendants will object to the presentation of Patel's conviction and related or similar Rule 404(b) material regarding Patel and S.K. Laboratories. The court need not address this secondary argument, as it agrees with the Government's primary argument in opposition to severance under Rule 14.

[11] While Defendants Willson and Miles cite *McRae*, *Erwin*, and *Cortinas*, Hebert relies solely on *McRae*.

unusable against Warren, and increasingly inflammatory to him, we are of the belief that limiting instructions could not mitigate the prejudice."). The Fifth Circuit found two items critical to the question of severance: (i) that even though no conspiracy had been charged, the case was tried like a conspiracy case, with evidence about the other defendants impliedly implicating the movant in what was essentially an uncharged conspiracy; and (ii) that the jury had been shown photographs of the charred remains of the victim, despite the fact that the appellant was not involved in burning the body. *Id.* at 826-27.

In *Erwin*, the appellants had been charged in a single indictment and all, except one, were charged with participating in a single conspiracy. 793 F.2d at 660. Appellants contended that the district court abused its discretion in not severing all or some of their counts. *Id.* at 665. Appellants tried to show prejudice by pointing to the fact that a large part of the trial consisted of evidence of two kidnappings, two beatings, and one killing, none of which involved appellants. *Id.* at 665-66. Appellants claimed that evidence of these activities, which differed qualitatively from the crimes with which they were charged, poisoned the jury's minds and made it impossible for the jury to untangle the evidence. *Id.* With one exception, the Fifth Circuit disagreed. *Id.* at 666. The Fifth Circuit explained that although evidence of more egregious crimes took up a large part of the trial, the rest of the evidence directly pertained to the conspiracy. *Id.* The Fifth Circuit also emphasized that the district court repeatedly cautioned the jury about the proper use of evidence. *Id.* With respect to one appellant, however, the Fifth Circuit reached a different conclusion, emphasizing that she was not named in the conspiracy charge and the charges against her were only peripherally related to those alleged against the other appellants. *Id.* The Fifth Circuit stated that "[a]s the trial progressed, it became increasingly apparent that very little of the mountainous evidence was usable

against her, and almost none of it applied directly. The prejudice she suffered from the joint trial, then, far outweighed any benefit of judicial economy." *Id.* The Fifth Circuit held that the district court abused its discretion in denying her severance motion when she re-urged it at the close of evidence. *Id.*

*Cortinas* involved a drug conspiracy in which the evidence against some of the coconspirators included evidence of the activities of a violent criminal gang. 142 F.3d at 246. In that case, the Fifth Circuit held that the appellants' motion for severance under Rule 14 should have been granted by the district court because they were being charged with conspiracy and drug trafficking activity, were prejudiced by highly inflammatory evidence about a shooting executed by a motorcycle gang that had joined the conspiracy after the appellants had already withdrawn. *Id.* at 248. The court concluded that limiting instructions given by the trial judge "were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities" of the motorcycle gang. *Id.*

First, unlike this case, *McRae*, *Erwin*, and *Cortinas* do not involve prejudicial spillover evidence from admission at a joint trial of the prior convictions of Codefendants. Second, unlike the facts alleged here, *McRae*, *Erwin*, and *Cortinas* concern emotionally charged, inflammatory evidence that was irrelevant to the movants seeking severance. As the Government correctly notes, the Fifth Circuit has itself distinguished *Cortinas* on this basis in a fraud case. *See Bieganowski*, 313 F.3d at 288 ("Prejudice was found in [*Cortinas*] because the defendants were never associated with the gang, and because the evidence of the gang's activities was 'highly inflammatory' and included evidence of a shooting. . . . The evidence against [the main defendant] was not as inflammatory as evidence of a shooting[.]"). As the Government argues in differentiating these cases from the instant

case, the extreme, inflammatory nature of the evidence unduly prejudicing the successful severance defendants was different in kind from the acts with which movants were charged. In *McRae*, it was evidence of racial slurs and desecration of a corpse; in *Erwin*, it was murder and kidnapping; and in *Cortinas*, it was murder. Here, the evidence against Codefendants about telling lies to retailers, the public, or the FDA about USPlabs' supplements, obstructing an agency proceeding, and violating the FDCA is not comparable to the type of evidence deemed prejudicial enough to justify severance in the unique cases of *McRae*, *Erwin*, and *Cortinas*.

Second, as previously stated, "a quantitative disparity in evidence [among codefendants] is clearly insufficient in itself to justify severance." *Pofahl*, 990 F.2d at 1483 (internal quotation marks and citation omitted). Further, "evidence of the reputation or past crimes of one co-defendant, although clearly inadmissible against the other co-defendants, does not normally justify severance." *United States v. Rocha*, 916 F.2d 219, 228-29 (5th Cir. 1990). Hebert, Willson, and Miles have not met their burden of demonstrating that the court should vary from the normal rule that defendants indicted together should be tried together. *See Zafiro*, 506 U.S. at 537; *Rocha*, 916 F.2d at 227-28. Otherwise stated, they have not carried their "difficult burden of proving that [they] will suffer the most compelling prejudice from continued joinder[.]" *Zicree*, 605 F.2d at 1388-89. They have not addressed to the court's satisfaction why it cannot instruct the jury to consider separately the evidence offered against each Defendant. *See, e.g., United States v. Berkowitz*, 662 F.2d 1127, 1135 (5th Cir. Unit B 1981). If the jury can keep separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted. *See Rocha,* 916 F.2d at 228-29; *United States v. Merida*, 765 F.2d 1205, 1219 (5th Cir. 1989) ("The test for severance under Rule 14 is whether the jury could sort out the

evidence reasonably and view each defendant and the evidence relating to that defendant separately. If cautionary instructions are deemed sufficient, severance is not required.").

Hebert, Willson, and Miles have not demonstrated that, under the circumstances of this particular case, the jury could not, as a practical matter, follow the court's instructions, and collate and appraise the independent evidence against each Defendant. This lack of faith in the jury's capacity to follow instructions is contrary both to this court's experience and to precedent. As stated by former Supreme Court Justice William J. Brennan, Jr.:

> The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them. Cases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights. *E.g., Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). **Absent such extraordinary situations, however, we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions.**

*Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (citations omitted) (emphasis added). Contrary to the arguments made by Hebert, Willson, and Miles, the court has no reason to think that the alleged wrongdoing charged in the Indictment and any defenses to the alleged wrongdoing are beyond the comprehension of the typical juror. The jurors will be given appropriate guidance and limiting instructions from the court. Counsel for Hebert, Willson, and Miles will be able to contribute by framing for the jury the charges and evidence against his or her individual client. By this means, the court concludes that the jury will be able to collate and appraise the evidence against each individual Defendant and reach a reliable judgment about guilt or innocence.

In addition to their failure to satisfy the court that a limiting instruction would be inadequate to address their concerns about prejudicial spillover, Hebert, Willson, and Miles do not explain adequately or persuasively how the potential prejudice they reference outweighs the Government's interest in judicial economy. For these reasons, the court rejects Hebert's, Willson's, Miles' respective arguments that severance is required under Rule 14 to alleviate prejudice caused by the spillover effect of evidence introduced at trial related to codefendants.

### 2. Severance Based on Exculpatory Testimony of Codefendants

In addition to prejudice arising from the spillover effect of evidence introduced at a joint trial, Hebert, Willson, and Miles contend a joint trial will impair their ability to present exculpatory testimony from Codefendants. For the reasons that follow, the court concludes that this argument lacks merit.

#### a. Standard - Exculpatory Testimony

Another form of prejudice may arise when one defendant needs the exculpatory testimony of his codefendants but is deprived of his Sixth Amendment right to present the exculpatory evidence because of the joint trial. *See, e.g., United States v. Nguyen*, 493 F.3d 613, 625 (5th Cir. 2007). To justify a severance based on a defendant's desire to call a codefendant as a witness on his behalf so as to exercise a Sixth Amendment right, the defendant must establish : "(1) a bona fide need for the testimony; (2) the substance of [the] testimony; (3) the exculpatory effect of [the] testimony; and (4) an indication that [the codefendant] would testify if the trial was severed." *Owens*, 683 F.3d at 99 (citations omitted). Under this test, "without an affidavit from the co-defendant himself or other similar proof, 'conclusory allegations' that a co-defendant would testify and what he or she would

testify about [are] not sufficient." *Nguyen*, 493 F.3d at 625 (internal alterations omitted). Further, "[r]epresentations by the [movant's] attorney are not sufficient." *Id.* (citation omitted).

b.    *Discussion*

Hebert asserts that a severance is warranted because, based on their deposition testimony in civil cases, Codefendants Geissler and Doyle, the majority owners of USPlabs, are in a position to offer helpful, exculpatory evidence, and he would not be able to call them as witnesses in a joint trial. Hebert's Mot. to Sever 6-7 (Doc. 357). Willson similarly contends that Geissler might be able to provide exculpatory testimony if he could call Geissler in a separate trial. Willson's Mot. to Sever 4 (Doc. 359). Miles makes similar arguments to those of Hebert and Willson. Miles' Mot. to Sever 8-9 (Doc. 391).

The Government counters that neither Hebert, Willson, nor Miles has satisfied the four-prong test in the Fifth Circuit necessary to establish a prima facie case warranting severance for the purpose of introducing exculpatory evidence of a codefendant. *See* Gov't's Resp. to Hebert's Mot. to Sever 7 (Doc. 360); Gov't's Resp. to Willson's Mot. to Sever 11-12 (Doc. 363); Gov't's Resp. to Miles' Mot. to Sever 8-9 (Doc. 414).

On the first prong of the four-part test, *see Owens*, *supra*, Hebert has not shown a bona fide need for Geissler and Doyle in particular to testify about something as general as his role in the company and does not explain why documentary evidence or testimony by other witnesses could not convey the same basic information. On the second prong, Hebert states that the testimony would relate to "his minor role in the Company, lack of involvement in product decisions, and his usefulness as a computer-savvy worker." Hebert's Mot. to Sever 6-7 (Doc. 357). Herbert fails to explain what Geissler and Doyle would actually say at a separate trial so that the court can evaluate

it according to the Fifth Circuit test. Instead, he bases his speculation on Geissler's and Doyle's respective deposition testimony in civil cases, but he does not cite any deposition testimony or describe it with any particularity, leaving the court without adequate detail to consider what effect the testimony could have if presented at trial. On the third prong, Hebert has not demonstrated how possible testimony by Geissler and Doyle would be exculpatory in nature or effect. Even if the allegations pertaining to Hebert are qualitatively less than those of Geissler and Doyle, the Indictment alleges he performed specific illegal acts and joined the conspiracy. The court observes that a person's role at a company, however, is not necessarily proportionate to or commensurate with any role he or she may have in criminal conduct. In light of the court's determination that Hebert has failed to satisfy the first three prongs of the four-prong test, it need not address the fourth prong. Hebert, therefore, is not entitled to severance to present Geissler's or Doyle's testimony.

The court similarly concludes that Willson has failed to satisfy the four-prong test. Like Codefendant Hebert, on the first prong, Willson has not shown a bona fide need for Geissler in particular to testify about something as general as Willson's role as a contractor for USPlabs. Willson does not explain why documentary evidence or testimony by other witnesses could not convey the same basic information. On the second prong, Willson states only that he believes Geissler's testimony would be exculpatory but says nothing about its substance. The court, therefore, is unable to evaluate the proposed testimony according to the Fifth Circuit test. On the third prong, as Willson has not presented the court with any specifics about the exculpatory testimony Geissler could provide, he has not demonstrated how this testimony would be exculpatory in nature or effect. As Willson has failed to satisfy the first three prongs of the four-prong test, the

court need not reach the fourth prong.  Willson, therefore, is not entitled to severance to present Geissler's testimony.

Like Hebert and Willson, the court concludes that Miles has failed to satisfy the four-prong test.  On the first prong, Miles has not shown a bona fide need for Geissler or Doyle to testify about something as general as his role at the company.  He does not explain why documentary evidence or testimony by other witnesses could not convey the same basic information.  As the Government notes, Miles "supervised other compliance employees, and there were many other USPlabs employees who were familiar with his role at the company."  Govt's' Resp. to Miles' Mot. to Sever 9 (Doc. 414).  On the second and third prongs, Miles makes conclusory legal assertions, and the court is unable to evaluate Geissler's or Doyle's proposed testimony to determine whether it would be exculpatory.  Like his Codefendants Hebert and Willson, Miles has failed to satisfy the first three prongs of the four-prong test.  The court, therefore, need not reach the fourth prong.  Miles, therefore, is not entitled to severance to present Geissler's or Doyle's testimony.

### 3.     The Possibility of Antagonistic Defenses

#### a.      *Standard - Antagonistic Defenses*

One defendant in a joint trial with multiple defendants may be able to show specific prejudice by demonstrating that he plans to present at trial a defense antagonistic to that of some or all of his codefendants.  *See Zafiro*, 506 U.S. at 538 (collecting cases).  "Severance is not automatically required when co-defendants present mutually antagonistic defenses."  *United States v. Matthews*, 178 F.3d 295, 299 (5th Cir. 1999).  Instead, "joint defendants face a heavy burden in demonstrating to a district court that antagonistic defenses warrant granting a severance motion."  *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002). "[T]o compel severance the defenses must be more than

merely antagonistic—they must be antagonistic to the point of being mutually exclusive . . . or irreconcilable." *Berkowitz*, 662 F.2d at 1133 (collecting cases); *see also Zafiro*, 506 U.S. at 538 (severance based on mutually antagonistic defenses not required when two defendants claimed ignorance of the presence of drugs in apartment). In other words, "the defenses must be so diametrically opposed that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'" *Daniels*, 281 F.3d at 177 (quoting *Berkowitz*, 662 F.2d at 1134). "The conflict must concern the core or essence of a defense, not merely 'minor or peripheral matters.'" *Id.* (quoting *Berkowitz*, 662 F.2d at 1134).

Moreover, "[e]ven when such a conflict is present, giving rise to the risk of prejudice, the district court should take into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures will suffice to cure any risk of prejudice." *Id.* (citing *Zafiro*, 506 U.S. at 538-39). As recently summarized by the Fifth Circuit:

> Since *Zafiro*, this court has consistently affirmed district courts' decisions to remedy any potential prejudice with "instructions to consider the evidence as to each defendant separately and individually, and not to consider comments made by counsel as substantive evidence [as sufficient] to cure any prejudice caused when co-defendants accuse each other of the crime."

*United States v. Warren*, 728 F. App'x 249, 256 (5th Cir. 2018), *cert. denied sub nom. Le v. United States*, No. 17-9350, 2018 WL 3009122 (U.S. Oct. 1, 2018) (quoting *United States v. Richards*, 204 F.3d 177, 195 (5th Cir. 2000) (in turn quoting *United States v. Mann,* 161 F.3d 840, 863 (5th Cir. 1998), *overruling on other grounds recognized by United States v. Byrd*, 377 F. App'x 374, 377 (5th Cir. 2010)); *see also Mann*, 161 F.3d at 863 (quoting *United States v. Stouffer*, 986 F.2d 916, 924

(5th Cir. 1993) ("[W]here defendants present antagonistic defenses, instructions to consider the evidence as to each defendant separately and individually, and not to consider comments made by counsel as substantive evidence sufficed 'to cure any prejudice caused when co-defendants accuse each other of the crime.'")).

b. <em>Discussion</em>

Hebert contends that severance is required because he may wish to assert an advice-of-counsel defense and is not clear on what positions his Codefendants will take on this issue:

> An anomaly of this case is the confusing and inconsistent regulatory scheme that necessitated the advice of numerous attorneys over time. Prior to indicting, the Government was well aware that USPLabs had hired some of the best FDA lawyers in the country. Hebert may wish to obtain testimony and documents from various lawyers to demonstrate his good faith. This issue has not yet been determined. But Hebert's co-defendants may be disinclined to utilize such a defense. That is, it is not clear what position his co-defendants, other than Cy Willson, would take. Thus, a separate trial is necessary.

Hebert's Mot. to Sever 5 (Doc. 357).

Hebert's motion lacks any specific information about his potential advice-of-counsel defense, the prejudice that it would cause, or a definitive statement that he plans to raise it. The court agrees with the Government that "Hebert certainly cannot be granted severance on the theoretical possibility that a defense he might want to assert at trial might conflict with a possible argument by one of his co-defendants." Gov't's Resp. to Hebert's Mot. to Sever 5 (Doc. 360). As already stated, severance is not appropriate even when co-defendants present "mutually antagonistic" theories of defense, *Zafiro*, 506 U.S. at 538; rather, the defenses must be antagonistic to the point of being "mutually exclusive . . . or irreconcilable." *Berkowitz*, 662 F.2d at 1133. Hebert does not provide any basis

for the court to conclude that this case is any different from those cases in which severance is not justified on the theory of antagonistic defenses that are not irreconcilable.

Miles asserts that he intends to present an "impossibility" defense, that is, that he was powerless to prevent USPlabs' alleged violations of the FDCA, that he was unaware of fraud at the company, had no power to ensure the company complied with the law, and that the alleged fraud prevented him from being able to perform his job as USPlabs' compliance officer. Miles' Mot. to Sever 7-8 (Doc. 391). Although testimony by Miles in support of his "impossibility" defense could raise questions about his Codefendants' credibility, it is not clear to the court how his "impossibility" defense, at its essence, conflicts with his codefendants' anticipated defenses. Absent more, the court concludes that Miles has not met his "heavy burden" of proving entitlement to severance based on antagonistic defenses. *See Daniels*, 281 F.3d at 177.

Willson argues that "this case is complicated by a codefendant's assertion of attorney-client privilege that effectively would preclude Willson from presenting a fully robust defense of good faith in his reliance on counsel." Willson's Mot. to Sever 4 (Doc. 359). He asserts that his codefendants will likely prevent him from presenting an advice-of-counsel defense. *Id.* at 5. The court rejects his argument. Willson has not presented the court with detailed information that would allow it to evaluate his advice-of-counsel defense or determine whether it might conflict with a Codefendants' defense. Like Codefendants Hebert and Miles, Willson has not met his "heavy burden" of proving entitlement to severance based on antagonistic defenses. *See Daniels*, 281 F.3d at 177.

**B.    The USPlabs Defendants' Motion to Sever (Doc. 388)**

The USPlabs Defendants argue that a joint trial with the S.K. Labs Defendants would be seriously and unfairly prejudicial to them because "the jury is likely to hear testimony about how Mr.

Patel is a convicted felon." USPlabs' Mot. to Sever 1 (Doc. 388). They argue that "[s]uch testimony is highly prejudicial [to them] because the jury is likely to erroneously associate Patel's felonious conduct with the USPlabs Defendants, with whom Mr. Patel worked." *Id.* at 1-2. Second, the USPlabs Defendants contend that "Mr. Patel's prior conviction for misbranding and fraud, and his underlying conduct, relating to the sale of alleged 'designer steroids' and 'designer drugs,' bear superficial similarity to the allegations in this case, and are therefore likely to confuse the jury and result in an unreliable verdict." *Id.* at 2. The USPlabs Defendants assert that such "innate prejudice and confusion is unlikely to be cured by a mere instruction asking jurors to ignore an association, however inappropriate, placed on display by the Government." *Id.* at 9-10.

The Government counters that, even assuming the USPlabs Defendants have shown some amount of prejudice resulting from the spillover effect of evidence introduced at a joint trial with Patel and S.K. Labs, they fail to explain convincingly why a limiting instruction by the court would be inadequate to address their concerns, or why this case is so exceptional that the court should vary from the normal rule that defendants indicted together should be tried together. *See* Govt's' Resp. to USPlabs Defs.' Mot. to Sever 3, 5 (Doc. 412). According to the Government, even assuming a quantitative disparity in the evidence among codefendants and the admission at trial of Patel's prior convictions, absent exceptional circumstances not present here, the Fifth Circuit would not require a severance and an appropriate limiting instruction would suffice to prevent the threat of prejudice of admission of evidence which is incriminating against one codefendant but not another. *Id.*

(citation omitted). Finally, the Government argues that, similar to Hebert, Willson, and Miles, the USPlabs Defendants rely on cases that are readily distinguishable.[12] The court agrees.

The USPlabs Defendants, like Hebert, Willson, and Miles in their respective individual motions to sever, *see supra*, primarily rely on the Fifth Circuit decisions of *McRae*, 702 F.3d 806, *Erwin*, 793 F.2d 656, and *Cortinas*, 142 F.3d 248. The court has previously held that these cases are inapposite. The court incorporates by reference its previous discussion distinguishing these three cases as if repeated herein verbatim. *See supra* sec. III.A.1.b.

In addition to relying on *McRae*, *Erwin*, and *Cortinas*, the USPlabs Defendants also cite *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005), to support severance under Rule 14 based on the prejudicial spillover effect of a joint trial with Patel and S.K. Labs. The procedural posture and facts in *Tarango* are markedly different than in this case. In *Tarango*, a doctor and his office manager (Tarango) were charged with conspiracy to commit health care fraud and aiding and abetting a scheme to commit health care fraud. The doctor absconded after the jury was selected but before trial began. The district court allowed the joint trial to proceed with only Tarango present, even though approximately fifty witnesses testified about the doctor's conduct, with only five witnesses testifying directly as to Tarango's complicity in the scheme. After the jury found Tarango guilty of aiding and abetting, the judge ordered a new trial based on the failure to sever, and the Fifth Circuit affirmed, finding the district judge did not abuse his discretion. *Id.* at 668. In affirming, the Fifth Circuit stated:

_____

[12] The Government also argues it is premature to ask for a severance based on Patel's criminal conviction, as the Government anticipates that "all of the defendants will object to the presentation of Patel's conviction and related or similar Rule 404(b) material regarding Patel and S.K. Laboratories." Govt's' Resp. to USPlabs Defs.' Mot. to Sever 2 (Doc. 412). The court need not reach this argument, as it agrees with the Government's primary arguments in opposition to the USPlabs' Motion to Sever.

Our principal concern which compels us to hold that Tarango should be granted a new trial stems, in large measure, from the clear prejudice that resulted from being tried alongside essentially an "empty chair," i.e., [the doctor's], towards which the Government's case was fully centered upon. Similarly, we are troubled, just as the district court was, by the fact that the jury was permitted to hear a great deal of evidence that was inadmissible against Tarango.

*Id.* at 674. Further, the Fifth Circuit noted in *Tarango*:

We do not mean to imply that because the preponderance of the evidence relates almost exclusively to one defendant in a multiple defendant conspiracy trial, the defendant who had quantitatively and qualitatively less evidence brought against them is presumptively entitled to a new trial, as a disparity of evidence in a trial involving multiple defendants does not in and of itself constitute prejudice.

* * *

However, given that there were approximately 50 witnesses who testified at trial-the disproportionate number of whom testified as to a missing co-defendant, that there was scant testimony that Tarango did anything improper other than draft the relevant HCFA claim forms as she was instructed to do by [the doctor], because the jury was permitted to hear a significant amount of inadmissible evidence (as it pertained to Tarango), and due to the degree of notoriety attending to [the doctor's] absence, we find that the cumulative effect of these factors when viewed in their totality, strongly weigh against overturning the district court's determination.

*Tarango*, 396 F.3d at 674-75 (internal citations omitted).

Unlike in *Tarango*, here there is no suggestion of an "empty chair" or a defendant being tried in absentia. Further, the "cumulative effect" of multiple factors is not present. With the exception of Miles, who is only charged in two misdemeanor counts, the remaining defendants are charged with felonies and conspiracy.

In sum, severance of the USPlabs Defendants from the S.K. Labs Defendants is not warranted in this case. As previously stated, "evidence of the reputation or past crimes of one co-defendant, although clearly inadmissible against the other co-defendants, does not normally justify severance." *Rocha*, 916 F.2d at 228-29. The USPlabs Defendants have not met their burden of demonstrating

that the court should vary from the normal rule that defendants indicted together should be tried together. *See Zafiro*, 506 U.S. at 537; *Rocha*, 916 F.2d at 227-28. Otherwise stated, they have not carried their "difficult burden of proving that [they] will suffer the most compelling prejudice from continued joinder[.]" *Zicree*, 605 F.2d at 1388-89. Even assuming the admissibility at trial of evidence of Patel's conviction, the USPlabs Defendants have failed to demonstrate that the jury will not be able to compartmentalize the evidence against the various Defendants or apply that evidence in accordance with the jury charge, in which the court anticipates that the jury will be instructed to consider only the evidence offered against the Defendant in question. In addition, the USPlabs Defendants have not persuaded the court that the potential prejudice they reference outweighs the Government's interest in judicial economy. For these reasons, the court rejects the USPlabs Defendants' argument that severance is required under Rule 14 to alleviate prejudice caused by the spillover effect of evidence introduced at trial related to Patel and S.K. Labs.

### C.    The S.K. Labs Defendants' Motion to Sever (Doc. 389)

The S.K. Labs Defendants move to sever Counts 6, 9, and 11. As previously stated, Count 6 charges USPlabs, Geissler, Doyle, and Hebert with obstructing the FDA investigation into a fall 2013 liver-injury outbreak allegedly associated with their products manufactured by S.K. Labs. Doc. 95 at 20-21. Count 11 charges USPlabs, Geissler, Doyle, and Hebert with conspiracy to commit money laundering to hide the proceeds of their fraud. *Id.* at 28-29. Count 8 (against USPlabs and Geissler) and Count 9 (against Doyle, Hebert, Miles, Patel, and S.K. Labs) arise out of a shipment in interstate commerce of OEP-AF on October 4, 2013, and allege that the product was misbranded under the FDCA because its labeling falsely declared CA (root) extract as an ingredient even though it was not in the product. *Id.* at 25-26.

The S.K. Labs Defendants move to sever Counts 6 and 11, arguing that they are not charged in these counts and will be prejudiced by the spillover effect of the jury hearing evidence on these two counts. They also move to sever Count 9 (a strict liability, misdemeanor offense), arguing it would inevitably confuse the jury to distinguish the allegations pertaining to this misdemeanor offense from the similar felony offense charged in Count 8 against USPlabs and Geissler only. *See* Doc. 389.

With respect to Counts 6 and 11, the Government contends that, insofar as the S.K. Labs Defendants can be heard to argue that they are entitled to a severance of any counts in which they are not charged[,] . . . [t]hey are incorrect." Gov't's Resp. to S.K. Labs Defs.' Mot. to Sever 3 (Doc. 413). The Government also challenges the S.K. Labs Defendants' argument that evidence of their coconspirators' crimes in Counts 6 and 11 would be overly prejudicial, "because those acts are closely related to, and naturally flow from, the criminal acts with which Patel and S.K. Laboratories *are* charged." *Id.* at 4 (original emphasis).[13] The Government further argues that a limiting instruction "will be more than adequate to address Patel's and S.K. Laboratories' concerns, and they do not offer any substantial argument otherwise." *Id.* at 5. Finally, the Government asserts that, even assuming some prejudice, "that prejudice would be vastly outweighed by the efficiency interest

---

[13] In support of its argument that evidence of their coconspirators crimes in Counts 6 and 11 would not be overly prejudicial to the S.K. Labs Defendants in a joint trial, the Government states:

> For example, Patel conspired with USP Labs and its principals to tell lies and make misrepresentations about USP Labs' products to continue sales (Count One). USP Labs then attempted to hide ome of the proceeds from that same conspiracy (Count Eleven). Patel conspired with the USP Labs defendants to lie about the safety profile of their products to retailers and the government (Count One). USP Labs then engaged in obstructive conduct when FDA attempted to investigate whether other USP Labs / S.K. Laboratories products were injuring consumers (Count Six).

Gov't's Resp. to S.K. Labs' Mot. to Sever 4 (Doc. 413).

in conducting one trial instead of two." *Id.* (citing *Owens*, 683 F.3d at 98). As to Count 9, the Government argues that the S.K. Labs Defendants "fail to explain how a jury would be confused by this situation, which is one that juries confront with pedestrian regularity." *Id.* at 6. Even assuming some prejudice, the Government contends that the S.K. Labs Defendants make no attempt to show that the prejudice would outweigh the efficiency interest of conducting one trial instead of multiple trials. *Id.* at 7 (citing *Owens*, 683 F.3d at 98).

### 1. Counts 6 and 11

The court rejects the S.K. Labs Defendants' arguments that Counts 6 and 11 should be severed. To the extent they believe Counts 6 and 11 should be severed merely because they are not charged in these counts, the law is to the contrary. *See* Fed. R. Crim. P. 8(b) ("All defendants need not be charged in each count."). To the extent the S.K. Labs Defendants move to sever based on prejudice under Rule 14, the court concludes based on the Indictment that the conduct alleged in Counts 6 and 11 would not be overly prejudicial to them. The court agrees with the Government that the conduct alleged in Counts 6 and 11 is closely related to, and naturally flows from, the criminal acts with which Patel and S.K. Labs are charged. *See supra* note 13.

Second, in addition to relying almost exclusively on case law from outside the Fifth Circuit, which is not binding on this court, the S.K. Labs Defendants cite *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753 (2000)), a case the Fifth Circuit has emphasized is limited to the "extraordinary circumstances of th[at] case." *Cortinas*, 142 F.3d at 253 n.6 (quoting *Fisher*, 106 F.3d at 632 n. 10). In *Fisher*, defendant Fisher appealed the trial court's refusal to grant him severance once evidence of codefendant Carney's contempt conviction was introduced to the jury. As explained by the Fifth

Circuit, Fisher and Carney were indicted together, and tried together, for the same offenses. The two defendants attempted to present a uniform defense. During his opening statement, Fisher's attorney told the jury that Fisher and Carney's conduct was so connected the acts of both defendants should be considered collectively. Fisher's attorney made these statements *before* he was aware a prior contempt conviction would be used against Carney. After Carney testified on direct examination to his contempt conviction, Fisher unsuccessfully moved for a severance because of the introduction of such evidence before the jury. The "devastating cross of Carney followed." *Id.* On appeal, Fisher argued that the introduction of the void contempt conviction against Carney caused a prejudicial spillover effect to Fisher's right to a fair trial and to his right to be judged independently by the jury. The Fifth Circuit agreed, holding that the district court abused its discretion in denying a severance midtrial, as the prejudice could not be cured by instruction. *Id.* The Fifth Circuit was careful to note, however, that its ruling was limited to the "extraordinary circumstances" of the case:

> Our conclusion that Fisher was entitled to a separate trial, under the unique circumstances of this case, does not signal a retreat from the general principle that the mere "spillover" effect of damaging evidence introduced against one defendant is insufficient to warrant the severance of other defendants. To the contrary, the Supreme Court has instructed us to consider the risk of prejudice on a case-by-case basis. Therefore, although we conclude that Fisher has demonstrated compelling prejudice warranting reversal of his conviction, **we limit our holding to the extraordinary circumstances of this case**.

*Id.* at 632 n.10 (emphasis added) (internal citations and quotation marks omitted).

Third, the S.K. Labs Defendants' suggestion that a juries are unable to follow limiting instructions has been soundly rejected by the Supreme Court and the Fifth Circuit. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *Ledezma-Cepeda*, 894 F.3d at 690 ("[I]t is generally presumed that juries follow the instructions

given to them by the district court and are capable of compartmentalizing the evidence against each defendant.") (citations omitted). Finally, any prejudice would be outweighed by the interest of judicial economy, as a separate trial for the S.K. Labs Defendants of Counts 6 and 11 would require duplicative evidence before two different juries.

### 2. Count 9

The court rejects the S.K. Labs Defendants' argument that Count 9 must be severed because the jury will be confused by its similarly to Count 8, and, therefore, render an unfair verdict on Count 9. *See* S.K. Labs Defs.' Mot. to Sever 9-10 (Doc. 389). Count 9 charges a strict-liability misdemeanor against Doyle, Hebert, Miles, Patel, and S.K. Labs based on the fact that OEP-AF was misbranded. Count 8 is essentially the same charge against USPlabs and Geissler, with the additional allegation that Geissler and USPlabs committed the offense with the intent to defraud or mislead. The potential penalty for Count 8 is more serious given the enhanced allegations. *See* 21 U.S.C. § 333(a). The elements of the two charges are similar, but the jury must determine in Count 8 whether Geissler and USPlabs committed the misbranding offense with the intent to defraud or mislead. There is nothing inherently confusing about a jury determining whether a defendant acted with a particular mental state, as juries make these determinations regularly.

### 3. Exculpatory Testimony

Finally, the S.K. Labs Defendants raise the issue of severance to allow exculpatory testimony by an unidentified codefendant, but they ask the court to delay ruling on that issue, arguing that "it is premature for the respective codefendants to be making decisions about whether they intend to testify or not." S.K. Labs Defs.' Mot. to Sever 12 (Doc. 389). Absent more, the court declines to delay a decision. In any event, the court has a "continuing duty at all stages of the trial to grant a

severance if prejudice does appear." *See Schaffer v. United States*, 362 U.S. 511, 516 (1960). The court can take up this argument during or after trial, as the need arises.

D.      **Defendants' Motion to Sever Count 10**

Defendants contend that Count 10, "which charges a misdemeanor count unrelated to other counts[,]" was improperly joined in the Indictment. Defs.' Mot. to Sever 11 (Doc. 382). They posit that Count 10 is misjoined with the other counts because the offense alleged, Introduction of an Adulterated Dietary Supplement into Interstate Commerce, is "not part of the common scheme or plan" and "is not an object of the wire fraud and misbranding conspiracies alleged, nor any of the other counts in the Indictment." *Id.* at 6. According to Defendants: "Trial of this case as it currently stands would essentially be two unconnected trials—one involving consumer fraud-related, intent-based allegations and the supplements at issue in those counts, and the other involving products-liability type allegations involving a different supplement entirely." *Id.* at 7. In addition, Defendants move to sever Count 10 under Rule 14, arguing that continued joinder of Count 10 is prejudicial to them. According to Defendants, "The Government has already signaled to [them] that [it] intend[s] to put on a series of [OEP-NF] customers before the jury and elicit testimony that those customers allegedly suffered injury and/or death as a result of ingesting [OEP-NF], the dietary supplement at issue in Count 10." *Id.* at 7-8. Defendants also note that the Government intends to present scientific experts to opine on the dangerousness of OEP-NF, which, coupled with testimony of consumers, would "inject unfair prejudice against the Defendants as to the other counts that simply have nothing to do with the allegations in Count 10." *Id.* at 8.

The Government opposes the motion and disagrees with Defendants' characterization of the various counts in the Indictment. In response to Defendants' request for severance under Rule 8, the

Government asserts that the allegation of the liver injury outbreak associated with Count 10 is not limited to Count 10, as Defendants assert, but is also relevant to multiple other counts, including Counts 1, 6, and 7, and evidence of injuries associated with OEP-NF "will be presented to the jury" in relation to not just Count 10 but these other counts as well. Govt's' Resp. to Defs.' Mot. to Sever 1 (Doc. 406). The Government also asserts that the "sparse case law that [Defendants] cite does not support their position." *Id.* at 5. In response to Defendants' Rule 14 severance request, the Government argues that Defendants fail to "explain how or why sorting through these charges will prejudicially confuse the jury[,]" *id.* at 6, and, even assuming some prejudice that cannot be cured through the appropriate limiting instructions from the court, Defendants "still fail to make the required showing as to the other prong of the severance test—that 'the prejudice outweigh[s] the government's interest in economy of judicial administration.'" *Id.* at 7 (quoting *Owens*, 683 F.3d at 98. The court agrees and, for the reasons that follow, will deny Defendants' Motion to Sever Count 10.

Defendants are charged with numerous crimes including a wire-fraud conspiracy (other than Miles), running from at least 2008 to 2014; wire fraud; obstruction of an agency investigation; introduction of misbranded and adulterated dietary supplements in interstate commerce; and money laundering, primarily relating to the advertising, labeling, and sales of OEP. In particular, the Indictment alleges that USPlabs began selling OEP-NF, a version of the supplement containing aegeline, in December 2012, and OEP-AF, a version of the supplement containing aegeline and CA, in the fall of 2013. Doc. 95 ¶¶ 29, 32. USPlabs and other Defendants allegedly knew that CA could potentially cause "liver toxicity" and "liver issues," but conducted no tests to determine whether this Chinese herb was safe or effective. *Id.* ¶¶ 29, 31, 35. In the fall of 2013, USPlabs products

containing aegeline were allegedly associated with an outbreak of liver injuries, with numerous consumers experiencing jaundice and other liver-related symptoms and several needing liver transplants to save their lives.  *Id.* ¶ 33.

Count 10 of the Indictment charges that on or about February 21, 2013, USPlabs and other Defendants shipped in interstate commerce OEP-NF that was adulterated because the dietary supplement "'present[ed] a significant or unreasonable risk of illness or injury under conditions of use recommended or suggested in labeling,'" in violation of 21 U.S.C. §§ 331(a) and 333(a)(l).  *Id.* ¶ 70 (quoting 21 U.S.C. § 342(f)(l )(A)(I))).

Having carefully considered the substance of the counts in the Indictment, the court concludes that Defendants cannot make the required showing for severance of Count 10 under Rule 8(b).  While perhaps the Government overstates the connection of Count 10 to the other counts in the Indictment, this is not a case in which Count 10 involves events that are entirely separate from the other crimes alleged or events that were completed before the other crimes began.  Here, the formulation and sale of OEP-NF is alleged to be part of a connected course of conduct between 2008 and 2014 involving many of the same Defendants selling the same type of dietary supplements, albeit with different formulations.  Further, as the Government correctly notes, whether the conspiracy alleged in Count 1 specifically involves Count 10 is not dispositive.  In *Dennis*, the Fifth Circuit stated, "It is clear that the government need not allege a conspiracy in order to join defendants or counts."  645 F.2d at 520.  Instead, "What is required is a series of acts unified by some 'substantial identity of facts or participants.'"  *Id.* (quoting *Nettles*, 570 F.2d at 551); *see also Harrelson*, 754 F.2d at 1176 ("Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining the relatedness of the facts underlying each offense.") (internal quotation

marks omitted). Here, the Indictment presents "a series of acts unified by some substantial identity of facts or participants" of which Count 10 is a part. *See Dennis*, 645 F.2d at 520.

The court's decision to deny Defendants' motion to sever Count 10 under Rule 8(b) is premised, in part, on the Government's representation that Count 10 will be tied to various other Counts in the Indictment, and that evidence of liver injuries allegedly associated with OEP-NF, directly at issue in Count 10, is also relevant to other Counts in the Indictment. *See generally United States v. Diaz-Munoz*, 632 F.2d 1330 1335-36 (5th Cir. 1980) (reversing the convictions of three defendants on the ground that, *inter alia*, counts of the indictment charging various income tax offenses were improperly joined with counts charging embezzlement and insurance fraud). In *Diaz-Munoz*, the defendants moved prior to trial for severance of the tax counts, contending that they were unrelated to the counts charging embezzlement and insurance fraud and, therefore, could not be joined with those counts under Rule 8. The Government responded that "(t)he proof at trial will show the allegations of the subject counts to be part of a series of transactions which began with the acts of fraud and were concluded when the fraudulent income was not reported as income to the Internal Revenue Service." *Id.* at 1335. Accepting the Government's representation that the counts would be connected up at trial, the district court denied the motions for severance. At trial, however, the Government failed to produce any evidence tending to prove a connection between the tax counts and the non-tax counts, and even conceded this point at oral argument. *Id.* at 1336. The appellate panel found that in representing to the court that the counts were part of a series of transactions, the government "assumed the risk that its proof would fail" and, accordingly, had to bear the consequences appertaining to that risk. *Id.*

*In light of Diaz-Munoz, the court fully expects the Government's assertions regarding Count 10 and its nexus to other Counts in the Indictment to materialize—especially in a case that is complex, tortuous, and voluminous, and one that has consumed, and will continue to consume, an inordinate amount of scarce judicial resources. If the proper legal nexus is not made between Counts, the court, at that time, will have to consider whether a severance is appropriate and will not hesitate to impose any other reasonable sanction as it deems appropriate.*

The court also rejects Defendants' argument that severance of Count 10 is required under Rule 14. First, Defendants' cited authority is not helpful to them. Like Hebert, Willson, and Miles in their respective individual motions to sever, Defendants rely on the Fifth Circuit decision in *Cortinas*, 142 F.3d 242, and like the S.K. Labs Defendants in their motion to sever, Defendants rely on the Fifth Circuit's decision in *Fisher*, 106 F.3d 622. The court has already addressed these cases and concluded they are inapposite. For purposes of brevity, the court hereby incorporates by reference its previous discussion distinguishing these two cases from this case. *See supra* sections III.A.1.b and III.C.1.

Second, Defendants have not persuaded the court that the potential prejudice they reference outweighs the Government's interest in judicial economy. Although Defendants question a jury's ability to "segregate the evidence and distinguish[] differences in the counts that have nothing to do with dangerousness [of OEP-NF]," *see* Defs.' Mot. to Sever 8, the court is not persuaded and concludes that appropriate limiting instructions will alleviate this concern. To the extent prejudice remains, Defendants have not convinced the court that the prejudice outweighs the interest in economy of judicial administration. *See Owens*, 683 F.3d at 98.

In sum, the court will deny Defendants' Motion to Sever Count 10.

## IV.    Conclusion

The court acknowledges the evidentiary and logistical challenges in a trial of multiple defendants on multiple counts.  The court, however, will not grant a severance on the grounds of convenience or that a particular defendant would have a greater chance of acquittal if charged alone. Counts 1 through 11 are part of the same series of acts or transactions, and joinder of them under Rule 8(b) was, therefore, proper. The court also determines that Defendants Hebert, Willson, and Miles, in their respective individual motions to sever, the USPlabs Defendants, and the S.K. Labs Defendants have not shown specific prejudice under Rule 14.  In addition, to the extent they have shown prejudice, as this court will appropriately instruct the jury to consider each Defendant's case separately and the evidence related to each Defendant separately, it is satisfied at this time that any residual risk of prejudice would be outweighed by the interest of judicial economy.  Further, the court will take all available measures to minimize or remove any legal prejudice to Defendants.  Any further challenges to the joint trial in this case can be addressed at trial.  *See Schaffer*, 362 U.S. at 516 (Courts have a "continuing duty at all stages of the trial to grant a severance if prejudice does appear."); *Berkowitz*, 662 F.2d at 1132 (1981) ("The district court has a continuing duty to monitor the entire trial for prejudice and to order severance if such prejudice does arise.").

Accordingly, for the reasons herein stated, the court: **denies** Defendant Matthew Hebert's Motion for Severance (Doc. 357); **denies** Defendant Cyril Willson's Motion to Sever (Doc. 359); **denies** Defendant Kenneth Miles' Motion to Sever (Doc. 391); **denies** Defendants USPlabs, LLC, Jacobo Geissler, Jonathan Doyle, Kenneth Miles, and Cyril Willson's Joint Motion to Sever (Doc. 388); **denies** Defendants S.K. Laboratories and Patel's Motion to Sever Counts Six, Nine, and

Eleven for Trial and to Reserve with Respect to Severance of Co-Defendants (Doc. 389); and **denies**

Defendants' Motion to Sever Count Ten of the Superseding Indictment (Doc. 382).

      **It is so ordered** this 7th day of November, 2018.

Sam A. Lindsay
United States District Judge